**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
OF TEXAS WACO DIVISION**

| | | |
|---|---|---|
| **TIJA MITCHELL,** | § | |
| | § | |
| **Plaintiff** | § | **CASE NO. 6:20-CV-00083** |
| | § | |
| | § | |
| **vs** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| | § | |
| **ENSEMBLE RCM LLC, assumed** | § | |
| **name Ensemble Health Partners** | § | |
| | § | |
| **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes TIJA MITCHELL, Plaintiff, complaining of ENSEMBLE RCM LLC, assumed name ENSEMBLE HEALTH PARTNERS, hereinafter referred to as "Defendant," and files this Original Complaint and for such would show the Court and Jury the following:

### SUMMARY OF THE COMPLAINT

This is an employment lawsuit alleging violations of applicable Federal and state laws prohibiting Defendant's discriminatory treatment of and retaliation against Plaintiff by Defendant, including but not limited to unequal pay, age discrimination, race discrimination, gender discrimination, failure to promote, failure train, harassment, creating a hostile work environment adversely affecting Plaintiff, and retaliation against Plaintiff. These violations are causes of action

under Federal laws, including *Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) as amended (Title VII); the Equal Pay Act of 1963 as amended (EPA), the Fair Labor Standards Act of 1938 as amended (FLSA), the Age Discrimination in Employment Act of 1967 as amended (ADEA),* as well as violations of applicable state laws, including but not limited to *Chapter 21 of the Texas Labor Code, Texas Labor Code § 21.001 et seq. as amended (TLC) and the Texas Commission on Human Rights Act as amended (TCHRA).*

Plaintiff seeks a jury trial to recover all damages, including back pay, front pay, compensatory damages, punitive damages, and other damages as deemed appropriate by this Court, including attorneys' fees.

## PARTIES

1. Plaintiff is an African American male individual who is over 40 years of age and is a resident of the State of Texas.

2. Defendant is a foreign limited liability company authorized to do business in the state of Texas.

3. Defendant also operates under the assumed name of Ensemble Health Partners.

4. Defendant's principal places of business are 13620 Reese Blvd., Suite 200, Huntsville, NC 28078, and 4605 Duke Dr., Suite 600, Mason, OH 45040.

5. Defendant can be properly served with the citation by serving its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

6. Defendant was the party that offered employment to Plaintiff, and then employed Plaintiff

at all times relevant to this suit.

## JURISDICTION AND VENUE

7.      Defendant is a foreign limited liability company doing business in the State of Texas.

8.      Plaintiff is a legal resident of the state of Texas and the United States of America.

9.      This Court has jurisdiction over this matter as it involves citizens of different states, and the amount in controversy exceeds $75,000. Accordingly, jurisdiction is properly based on diversity of citizenship under 28 U.S.C. § 1332, as amended.

10.      Jurisdiction is also based on federal questions under 28 U.S.C. § 1331 to the extent Plaintiff assets claims under applicable Federal and state law; including but not limited to, *Title VII of the Civil Rights Act of 1964 as amended (Title VII)*.

11.      Jurisdiction of Plaintiff's claims under the applicable state laws, including but not limited to the *Texas Labor Code as amended (TLC),* is also appropriate under *28 U.S.C. § 1367, as amended*, since the state law causes of action are so related to the federal claims in the action within the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

12.      At all times relevant to this cause of action, Plaintiff was an "employee" of Defendant and Defendant was an "employer," as these terms are defined under *Title VII*, *42 U.S.C.§ 1981 as amended*, and *Chapter 21 of the TLC as amended*. Plaintiff has exhausted the administrative remedies as required by law and as hereinafter stated.

13.     A substantial portion of the causes of action complained of herein occurred in Bell County, Texas.

## FACTS

14.     On or about March 22, 2017, Plaintiff accepted Defendant's offer of employment as Patient Access Manager at Defendant's business location at 850 West Central Texas Expressway, Harker Heights, Texas.

15.     In or about March 2017, Defendant sent Plaintiff to a general employment orientation program in North Carolina.

16.     Based on Defendant's employment of Plaintiff, Plaintiff relocated his family from Memphis, Tennessee to Central Texas.

17.     Plaintiff started work for Defendant in Central Texas on or about April 10, 2017, as Patient Access Manager.

18.     The Patient Access Manager position reported to and assisted the Patient Access Director.

19.     At the time Plaintiff was hired, the Patient Access Director was Paula Martinez.

20.     In or about May 2017 Defendant sent Plaintiff to a Patient Access Manager training program (the "Training Program").

21.     The Training Program was a multi-day event for a Patient Access Manager; however, unbeknownst to Plaintiff, Defendant included some intense training for a Patient Access Director

22.     At some point between May and mid-June of 2017, Patient Access Director Martinez was no longer employed by the Defendant.

23.     On or about June 17, 2017 Defendant offered Plaintiff the position of Interim Patient Access Director and Plaintiff accepted the position.  As Interim Patient Access Director, Plaintiff would report to Amanda Hammons, Defendant's Regional Patient Access Director or System Access Director.

24.     Defendant represented to Plaintiff that Plaintiff's primary responsibility as Interim Patient Access Director was to preserve the Defendant's account with Seton Medical Center Harker Heights ("Seton").  Plaintiff was told not to focus on Patient Access Director metrics.

25.     Plaintiff succeeded in preserving the Seton account, and as directed by Defendant Plaintiff did not focus on Patient Access Director metrics.

26.     Although Plaintiff performed the requested task of preserving the Seton account, Defendant, did not promote Plaintiff, and did not increase Plaintiff's compensation.

27.     After preserving the Seton account, Plaintiff asked Defendant about the promotion to Patient Access  Director. Contrary to Defendant's instructions to Plaintiff about preserving the Seton account and not  focusing on Patient Access Director, Defendant told Plaintiff that he did not meet Patient Access Director metrics comparable to other Patient Access Directors who reported to Amanda Hammons.

28.     Defendant would not give Plaintiff a written set of requirements to meet in order to  be

promoted to Patient Access Director.

29.     Defendant would  assign duties to Plaintiff, and when those  duties were accomplished, Defendant would add more duties that were required for Plaintiff to be considered for promotion to Patient Access Director and receive the increased Patient Access Director compensation.

30.     Defendant led  Plaintiff to believe that if he performed the additional duties, he would be promoted to Patient Access Director and receive an increase in compensation.

31.     Defendant would not provide Plaintiff with a final complete list of tasks that Plaintiff had to perform in order to be promoted and to receive increased compensation.  Rather, Defendant kept adding tasks to Plaintiff's duties and dangling the prospect of a promotion and  increased compensation.

32.     Plaintiff continued to perform the duties of Interim Patient Access Director and Patient Access Manager assigned by Defendant, even though Plaintiff was compensated as a Patient Access Manager.

33.     In or about August of 2017, Plaintiff complained to Defendant, including to Defendant's Human Resources Department about his treatment by Amanda Hammons.   The complaints included the failure to promote and the  failure to increase Plaintiff's compensation.

34.     In or about early September of 2017, Plaintiff complained to Leah Curry Clevinger, Vice President, Human Resources or Manager of Human Resources, and Mr. Robbie Ratcliff, Senior Vice President for Revenue Cycle, about how Amanda Hammons was treating Plaintiff, including the harassment, failure to promote and unequal pay.

35.     Defendant's harassment and hostile work environment continued notwithstanding Plaintiff notifying Defendant.

36.     When Plaintiff asked Defendant about the promotion and increased compensation, instead of promoting Plaintiff and increasing his compensation to that of Patient Access Director, the Defendant would assign additional duties to Plaintiff.

37.     Defendant continued to require Plaintiff to perform Patient Access Manager duties, as well as Patient Access Director duties.

38.     On information and belief, Defendant assigned duties to Plaintiff that exceeded the duties assigned to other Patient Access Directors that reported to Amanda Hammons.

39.     The other Patient Access Directors who reported to Amanda Hammons were all Caucasian females.  Plaintiff was the only African American, male, Patient Access Manager and Interim Patient Access Director who reported to Amanda Hammons.

40.     Amanda Hammons is a Caucasian female.

41.     Plaintiff continued to perform the tasks assigned by Amanda Hammons and continued to ask about the promotion and increased compensation.

42.     Defendant created a hostile work environment for Plaintiff by threatening not to support Plaintiff's promotion, increased pay, and warning Plaintiff that if he continued to ask about a promotion and increased pay he might lose his employment with Defendant.

43.     Notwithstanding the Defendant's threats, hostile work environment, and the potential loss of employment, Plaintiff continued to perform the tasks assigned by Defendant.

44.     Defendant continued to increase the assignments to Plaintiff, but Plaintiff was not promoted nor was Plaintiff's compensation increased while he performed as Patient Access Manager and the increased duties performed by the Patient Access Director.

45.     On or about October 19, 2017 Defendant promoted Plaintiff to Patient Access Director however, Plaintiff was not paid the compensation of a Patient Access Director.

46.     Plaintiff performed the Patient Access Manager duties and Interim Patient Access Director duties from approximately mid-June of 2017 until the announced promotion.

47.     Notwithstanding the promotion, Defendant did not increase Plaintiff's pay to that of a Patient Access Director.

48.     Plaintiff performed the Patient Access Director duties at the same standard, or better than the performance metrics of Defendant's other Caucasian female Patient Access Directors who reported to Amanda Hammons.

49.     Defendant continued to fail to pay Plaintiff the Patient Access Director compensation.

50.     On or about January 23, 2018, Emily Jones was promoted to Vice President, Patient Access.

51.     In a letter dated January 26, 2018 Judson Ivy, Defendant's Chief Operating Officer, stated that Plaintiff was getting a discretionary bonus for Plaintiff's performance during 2017.  Judson Ivy also thanked Plaintiff for the value that Plaintiff brought to Defendant.

52.     On or about February 3, 2018, Emily Jones met with Plaintiff.  This was the first time Plaintiff had met Emily Jones.  Plaintiff advised Emily Jones of Plaintiff's concerns with Amanda Hammons, including the delay in promoting Plaintiff to Patient Access  Director, and the failure to pay Plaintiff the increased compensation.

53.     On or about February 7, 2018, Emily Jones again met with Plaintiff.  At this meeting she delivered a sixty (60) day Performance Improvement Plan ("PIP").

54.     Plaintiff was shocked by being placed on PIP.  Plaintiff had never been told that he would be disciplined, including never being told he would be placed on PIP.  Further Plaintiff had performed at or better than the level of other Patient Access Directors who reported to Amanda Hammons.

55.     On information and belief, no other Patient Access Directors who reported to Amanda Hammons were placed on a PIP in February of 2018.

56.     On information and belief, Defendant, an African American male, was the only Patient Access Director who reported to Amanda Hammons who was placed on a PIP.

57.     The PIP that required Plaintiff to report to Amanda Hammons.  Amanda Hammons was the very person Plaintiff had complained of to Ms. Jones.

58.     Nevertheless, Ms. Jones proceeded to place Plaintiff on the PIP reporting to Ms. Hammons.

59.     Defendant used the PIP to continue to harass, retaliate, and discriminate against Plaintiff, and not to pay Plaintiff the compensation of a Patient Access Director.

60.     On or about April 9, 2018 Plaintiff filed a grievance with Leah Curry Clevinger of Defendant's Human Resources Department, and Lisa Carter, Chief People Officer.

61.     On or about April 10, 2018, Defendant, through Toni Hatch, Vice President of Continuing Education, threatened Plaintiff with termination if he did not meet certain continuing education requirements.

62.     On information and belief, Plaintiff was to only one of Defendant's employees at the Central Texas location who was threatened with termination by Toni Hatch.

63.     On or about April 13, 2018 Plaintiff filed a formal complaint with Equal Employment Opportunity Commission.

64.     On or about April 14, 2018 Plaintiff sent a grievance to the Ensemble Ethics and Compliance reporting line.

65.     On or about April 26, 2018 Plaintiff met with Emily Jones and Lisa Carter regarding Plaintiff's grievance (the "Grievance Meeting").

66.     At the Grievance Meeting, Ms. Jones and/or Ms. Carter represented to Plaintiff that all persons listed on his grievance had been contacted.

67.     Subsequently, Plaintiff learned that two individuals named in his grievance, were never contacted by either Ms. Jones or Ms. Carter.  This failure to conduct a complete and thorough investigation of Plaintiff's grievance is a continuation of the discrimination, harassments, unequal pay and retaliation to which Plaintiff had been subjected.

68      On or about April 27, 2018, Defendant terminated Plaintiff's employment.

69.     On or about May 24, 2018 Plaintiff received a Consolidated Omnibus Budget Reconciliation Act (*COBRA*) notice that his employment had been terminated voluntarily. Defendant fired Plaintiff.  Plaintiff did not end his employment voluntarily.

70.     On information and belief, Defendant replaced Plaintiff with a Caucasian Female,  younger than Defendant.

## CAUSES OF ACTION
## VIOLATIONS OF APPLICABLE FEDERAL AND STATE LAWS

71.     Plaintiff hereby incorporates by reference paragraphs one (1) through and including seventy (70) of this Complaint, as well as the opening clauses.

72.     Plaintiff is a member of a protected class as he is an African American male person who was over 40 years of age during his  employment with Defendant.  Plaintiff was an "employee" and Defendant was an "employer" as those terms are defined under applicable Federal and state laws, including *Title VII of the Civil Rights Act of 1964, as amended*, and *Chapter 21 as amended of the TLC*, and *TCHRA as amended.* Defendant employed more than fifteen (15) employees at all times relevant to this suit.

73.     Further, Plaintiff was at all times qualified to perform the duties of a Patient Access Manager and/or a Patient Access Director, including the additional duties assigned to him by Defendant.

74.     Plaintiff notified Defendant and filed grievances with Defendant regarding Plaintiff's

concerns, including but not limited to Defendant's subjecting Plaintiff to harassment, failure to promote, delay in promoting Plaintiff, unequal pay, retaliation and a hostile work environment.

75.     Plaintiff performed the duties of Patient Access Director at the same metrics or better metrics than the other Patient Access Directors who reported to Amanda Hammons.

76.     Plaintiff was the only African American male Patient Access Director who reported to Amanda Hammons.

77.     Plaintiff suffered several adverse employment actions, including but not limited to delayed promotion, unequal pay, hostile work environment, failure to provide all of the training for the Patient Access Director position, continuous harassment and retaliation, unwarranted and unfair disciplinary actions such as the PIP.

78.     Plaintiff was placed on a PIP and was required to report to and take direction from Amanda Hammons, the key employee at Defendant about whom Plaintiff complained regarding the discrimination, harassment, unequal pay, failure to promote, delayed promotion, hostile work environment, and retaliation.

79.     Further, in light of Defendant's treatment of Plaintiff, Plaintiff filed an EEOC complaint against Defendant on or about April 13, 2018.

80.     Defendant terminated Plaintiff on or about April 28, 2018.

81.     Defendant's actions were violations of applicable Federal laws, including *Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) as amended (Title VII); the Equal Pay Act of 1963 as amended (EPA), the Fair Labor Standards Act of 1938 as amended (FLSA), the Age*

*Discrimination in Employment Act of 1967 as amended (ADEA),* as well as violations of applicable state laws, including but not limited to *Chapter 21 of the Texas Labor Code, Texas Labor Code § 21.001 et seq. as amended (TLC) and the Texas Commission on Human Rights Act as amended (TCHRA).*

82.     Defendant's failure to follow the requirements of the applicable Federal and state laws resulted in damages as hereinafter set forth.

## DAMAGES

83.     As a result of the above actions by Defendant, Plaintiff has suffered substantial damages including lost past and future wages, and various employee benefits.  Further, Plaintiff has suffered pecuniary losses and past and future compensatory damages, including but not limited to, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which Plaintiff now sues.

## PUNITIVE/LIQUIDATED DAMAGE

83.     Defendant knowingly and intentionally violated applicable Federal and state laws as set forth herein, including but not limited to, failing to prompt Plaintiff to the Patient Access Director position from June 2017 to October 2017, by continuing to allow Amanda Hammons to harass and retaliate against Plaintiff, by allowing Emily Jones to retaliate against engage an interactive process with Plaintiff. Plaintiff is entitled to recover punitive damages from Defendant under those applicable Federal and state laws.

## ADMINISTRATIVE PREREQUISITES

84.    Plaintiff has satisfied all prerequisites to this suit, including exhausting all required administrative remedies. Plaintiff timely filed a complaint against Defendant with the Texas Workforce Commission-Civil Rights Division (TWCCRD), which is a joint filing with the Equal Employment Opportunity Commission (EEOC) based on their work sharing agreement, exhausted all administrative remedies, received right to sue notices from the EEOC and the TWCCRD.

## ATTORNEY'S FEES

85.    Plaintiff had to employ one or more attorneys to vindicate his rights under applicable Federal and state law and seeks reasonable and necessary attorneys' fees.

## JURY DEMAND

86.    Plaintiff hereby respectfully demands a trial by jury, which has already been timely demanded in the Texas state court suit, that was removed to this Court.

## PRAYER

WHEREFORE, Plaintiff requests that Plaintiff be awarded relief and damages, as stated above, including past and future lost compensation and benefits, past and future compensatory damages, punitive damages, liquidated damages, injunctive relief, attorney fees, costs of court,

and such other relief, both at law and in equity, as Plaintiff may be justly entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, PLLC**

220 South 4th Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591 - Fax Number
Email- peek@thetexasfirm.com

/s/ *Gail L. Peek*
**Gail L. Peek**
Texas State Bar No. 24028749

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been

served on Defendant, Ensemble RCM LLC and its associated entity, ENSEMBLE HEALTH

PARTNERS, on this the 3rd day of February, 2020 by means of the CM/ECF system of this Court.

   /s/ *Gail L. Peek*
**Gail L. Peek**